SMOOT and NICHOLSON v. LECATT.

1. A previous peaceable possession under claim of title, though for less than twenty years, when there has been no abandonment, s sufficient to sustain ejectment against a tres, asser; particularly where there has been a descent cast, or a devise.

2. Such possession is sufficient *prima facie* evidence of an estate of inheritance in the wife, so as to sustain a claim of curtesy by the husband.

3. ' decree of divorce, a *mensa et thoro* pronounced against the husband, does not bar him of the right of curtesy.

4. An agreement made before marriage between husband and wife, whereby he relinquished all right to the property in question, and agreed the wife should retain it to her own use, adjudged not to bar the right of curtesy. Nor does an injunction, granted on said agreement in the lifetime of the wife, prohibiting the husband from intermeddling with her property.

LITTLETON LECATT declared in the Circuit Court of Mobile county, in an action of trespass to try titles, against Alexander B. Smoot, to recover possession of certain premises in Mobile, called the Mobile Hotel, and damages for the detention. At a subsequent term, Isaac R. Nicholson, on his motion, was made a party defendant, on condition that he offered no evidence to prejudice the title and possession of Smoot. At the February term, 1827, the cause was tried on the plea of not guilty, and a verdict was found for the plaintiff, for the possession, and $1350 damages; and a writ of *habere facias possessionem* was awarded.

The defendants at the trial, took a bill of exceptions, by which it is shewn that the plaintiff, Lecatt, proved his marriage in July, 1813, with Ann Surtill, widow of Thomas Surtill; and read to the jury a true copy of the will of said Thomas Surtill, taken from the Spanish archives, whereby it appeared that Thomas Surtill, by his will, dated the 24th of September, 1812, had devised 'he whole of his estate, real and personal, to his wife and his two children. He further proved that Thomas Surtill had been in possession of the premises in dispute, several years before his death, probably from four to six years, and died in possession of the property in dispute; that Ann Surtill continued in possession of the property after the death of

Thomas Surtill, until after her intermarriage with Lecatt; and that Lecatt and his wife Ann, had continued in possession some time after the marriage.    He also proved that Ann Surtill survived both of her children mentioned in said will, and he also proved that he, Lecatt, had issue after his marriage with said Ann, and that said Ann died before the institution of this suit.    The value of the rents were also proved, and Smoot's possession of the premises when suit was brought.

The defendants proved that John H. Mallory, and Pope and Armstrong, under said Mallory, had been in possession of the premises in dispute for seven years before the suit was brought, claiming the said premises as their own. They then read in evidence the original bills, exhibits, answers and orders, proofs and the decrees thereon rendered in the late Superior Court of the county of Mobile, in the then Mississippi Territory, touching a controversy between said Lecatt and his wife; one of which bills was filed by said Ann Lecatt, on the 31st of January, 1814, praying a divorce from said Lecatt, her husband; and another of which was one filed by her on the 11th of February, 1814, to restrain her husband, and enjoin him from possessing or enjoying her separate property, agreeable to the provisions of a marriage settlement between the said Ann and the said Lecatt, a copy of which agreement was appended to her said bill.    The other was a bill filed in said Court on the 21st of February, 1814, exhibiting said marriage settlement, which is in the following words:

" Articles of agreement indented, made, &c. between Littleton Lecatt, sailing master in the United States' Navy, of the one part, and Ann Surtill, widow of Thomas Surtill, of the other part, as follows: Whereas, a marriage is shortly intended to be had and solemnized between the said Lecatt and Ann Surtill, it is therefore covenanted and agreed by and between the said parties to these presents, in manner and form following, that is to say; that the said Littleton Lecatt by these presents, renounces all claim, right, title or interest to any part or parts of the estate of the late Thomas Surtill, in right of the said Ann Surtill, his intended wife; she to retain the said property of what nature soever, for her own use and benefit.    In witness whereof, we have hereunto set our hands and seals, in the presence of the subscribing wit-

nesses, at the town of Mobile, Mobile county, Missis-
sippi Territory, this 19th day of July, 1813.
              (Signed)                 LITTLETON LECATT,
                                       ANN LECATT."
Attested by *C. S. Stewart* and *W. R. Dodge.*

This bill of Littleton Lecatt was filed to set aside and
vacate this marriage agreement. On these bills, injunc-
tions were issued; one of which was in favor of said
Ann, against Lecatt, in these words : " Let an injunc-
tion issue prohibiting the above named Littleton Lecatt,
(under the penalty of $2,000) from committing any waste
of such part or parts of the estate of the late Thomas
Surtill, as the said Littleton Lecatt holds in the right of
his wife Ann, (formerly Ann Surtill) or disposing of the
same, or receiving any rents until further order.
                    HARRY TOULMIN, *Judge, &c.*"
    February 10, 1814.

On those bills a final decree was made by the chancel-
lor in the following words :

ANN LECATT          ⎱          ⎱  LITTLETON LECATT
     v.             ⎰  AND     ⎰       v.
LITTLETON LECATT,   ⎰          ⎱   ANN LECATT.

## IN CHANCERY.

Having examined the evidence and considered the ar-
guments of counsel in these cases, I decree a divorce
from bed and board between the said parties. I do more-
over dismise the bill of Littleton Lecatt, praying that the
agreement which he made with his wife, antecedent to,
and in consideration of the *intended* marriage, might be
canceled. And I do dissolve the injunction against Ann
Lecatt, and do render that against Littleton Lecatt per-
petual. And I do order that the parties do respectively
pay their own costs in the several suits existing between
them in the Superior Court of law and equity in and for
the county of Mobile.           HARRY TOULMIN,
    June 19, 1814.              *Judge of said Court.*"

The plaintiff then proved that Mallory, or those under
whom he claimed, acquired the possession of the pre-
mises under a purchase from Ann Lecatt. There was
however, no evidence of any connexion of title or claim
between Mallory or any person claiming under him, and
either of the defendants to the action.

On this proof, the defendant's counsel requested the

Court to charge the jury that the plaintiff was not enti-
tled to recover; but this the Court declined, and instruct-
ed them that if they believed the facts proved by the
plaintiff, he was entitled to recover the premises and dama-
ges for the detention, as the facts proved would by law,
constitute the plaintiff a tenant of said premises by the
curtesy.

The defendants below entered an appeal to this Court,
and assign the charge of the Court below as error.

The cause was argued at the last term, and continued
for further argument, and re-argued at this term.

PARSONS, HITCHCOCK, COOPER and BAGBY, for the
plaintiffs in error, argued that the charge of the Court,
entitling the plaintiff below to recover as tenant by the
curtesy, was wrong for two reasons.

1. That the evidence offered by the plaintiff was insuf-
ficient to entitle him to a verdict. 1. In not shewing
that Ann Surtill, afterwards Ann Lecatt, was seized of
the premises in question as of an estate of *inheritance,* [a]
without which there could be no curtesy. No evidence
of a title is shewn of which there could be a *seizin* dur-
ing her coverture. 2 In not shewing that Thomas Surtill
had no children, other than those named in the will, and that
the children named in the will died without issue or heirs,
other than Ann Lecatt. 3. In not shewing that Littleton
Lecatt had issue by *Ann Lecatt,* born *alive* and *capable of in-
heriting the estate.* Nor does it appear he had issue by his
wife; the proof being simply "that he had issue after his mar-
riage with the said Ann." [b] The issue may have been after
the divorce, and therefore unlawful, and may have been
by another woman. 4. That the plaintiffs' title, and those
under whom he claimed, even was his right to the cur-
tesy complete in other respects, was insufficient to evict
the defendants. No grant or documentory title was
shewn, but only a bare possession, without right, for less
than twenty years, which was insufficient in ejectment. It
is not shewn that the appellants claimed under Mrs Le-
catt, and the plaintiff must recover on the strength of his
title; it did not appear what the title of Thomas Surtill
was; he might have been merely a tenant for years. A
possession in those under whom the plaintiff claims. of not
exceeding ten years, is shewn as the foundation of the
title, and this has never been held sufficient to recover in

JULY 1828.

Smoot and
Nicholson
v.
Lecatt.

[a] 1 Cruise, 121,
§ 3.

[b] Co. Litt. ch. 4,
§ 35. 1 Cruise
106, 111. 1 Blk.
Com. 457. Salk,
123.

75

JULY 1823.

Smeot and
Nichoison
v.
Pecatt.

ejectment, or to establish a presumption of a grant. For aught appears also, there may have been in the will a devise over. It does not appear that a fee could be, or was devised.

2. That the evidence produced by the defendants shewed a sufficient defence to bar the plaintiff. 1. Because the marriage agreement made between Lecatt and his wife, was a complete bar, inasmuch as he relinquished *all rights whatever* to her separate estate ; and this was the ground mainly relied on. 2. That the decree of divorce a *mensa et thoro* was a bar to the curtesy. 3. That the action of the plaintiff was brought in violation of the injunction of the Court of Chancery, in which the said agreement had been established and litigated, and where the injunction had been made perpetual ; and therefore the plaintiff could maintain no action.

*a* See the argument in the next case, where the same title was in question.

They also cited 12 Wheaton, 523, 530. Reeves D. R. 162, 172, 175. [a]

SALLE and KELLY, for the defendant in error.

On the 14th May, 1812, Congress passed an act annexing all that portion of territory lying east of Pearl river, west of the Perdido, and south of the 31st degree of latitude, to the Mississippi territory, and extending all the laws and ordinances of the United States to the same, [b] which was previous to the date of the will made by Thomas Surtill. Therefore, the whole case comes under our laws.

*b* 4 Vol. Laws U. S. 432.

The question presented to the Court is, whether the appellee, having married Ann Surtill, who was seized in fee of the premises, and who is now dead, and by whom he had issue, is entitled as tenant by the curtesy ? If he be not, it must be by virtue either of the written agreement, the decree of divorce, or the injunction enjoining Lecatt from committing waste and receiving rents.

The agreement is no bar. 1st. Because it can have no *legal* effect. It is not a feoffment, [c] gift nor grant; nor is it a lease, nor exchange, nor partition ; nor is it a release by way of *enlarger l'estate*, or *milter l'estate*, or *milter le droit*, or extinguishment, or by way of entry and feoffment, [d] nor a covenant to stand seized to the use. [e] As the agreement has no force as a conveyance at common law, inasmuch as Lecatt had nothing to convey, the only effect it can have, is, as an agreement that the wife should receive the rents and profits during coverture, and as such,

*c* 2 Blk. Com. 309.

*d* Litt. 446,
*e* 2 Blk. 337.

it became extinguished by the marriage.[a] A court of equity, however, would interpose, and there being no trustee, would convert the husband into one,[b] and make him account,[c] but not very strictly.[d] These agreements being merely operative in equity, courts of law can take no notice of them.[e] Much stronger is the case where the equity set up is *res inter alios acta.* 2nd. The words of the agreement do not constitute a separate estate in the wife,[f] but if they do, the husband is nevertheless entitled to be tenant by the curtesy.[g] The renunciation relates only to rights during the coverture.

The divorce a *mensa et thoro*, not dissolving the bonds of matrimony, does not alter the husband's right to the the wife's property.[h] The wife is entitled to an appeal after divorce.[i] If a husband alien the lands of his wife, and is afterwards divorced, the wife may recover them, but the divorce must be a vinculo.[k] Alimony of the wife is suspended by the husband offering to cohabit.[l]

The injunction restraining the husband from committing waste does not bar him of his curtesy; for he was punished at common law for waste.[m] Restraining him from receiving the rents, does not bar him.[n] The injunction operates only *in personam.* There are only two cases where equity acts *in rem*, and they are in cases of dower and partition. In all other cases, equity acts *in personam* And if the proceedings in this Court are in violation of an injunction which is *functa officio*, the Court of Chancery will punish for the contempt, but the contempt does not bar the action.

As neither the divorce nor injunction is a bar to the tenancy by curtesy, the decree is nothing more than the ordinary exercise of the discretionary power of a Court of Chancery, either to grant alimony, or to enjoin the husband from intermeddling with the wife's property. Thus, if the husband desert his wife, or compel her to leave him from cruel treatment, his interest in her personal property will be suspended.[o] But if the wife is in fault, the Court will not restrain the husband from receiving the rents and profits of her separate estate.[p]

It is objected that the evidence introduced by the plaintiff below does not shew that the wife was seized of an estate of inheritance. The second husband, sueing for an estate by the curtesy, need not go back further than the title by which the wife claims. She claims as devisee of

JULY 1828.

Smoot and Nicholson v. Leeatt.

a 4 Vin. Ab. 162, 163. 2 Fontb.
b 1 Fontb. 106, note o. 2 Roper 156.
c Roper on Wills 210.
d 3 John Ch. R. 77.
e 2 Roper 183. 9 John. 488.
f 2 Roper 165.
g 1 Atk. 607. 1 Roper 24 3 Hen. and Munf 414. 7 John. Ch. R. 243. 1 Fontb. 402.
h 2 Jac. Law Dic. 302. Litt. 380. Co. Litt. 32, b.
i 2 Sull. Law. Lec. 291
k Vin. Ab. Baron and Feme 206. 1 Roper 53. F. N. B. 471. Rop. on Wills 71. 1 Fontb. 311.
l Francis' Maxims p. 9, § 7. Powell on Contracts 91
m 2 Blk. 282. Eden on Injunctions 118.
n 1 Atk. 609. Litt. 35, 52. 2 Blk. 127. 8 John. 262. Bacon Ab. title Curtesy 220.

o 1 Rop. 274, 275.
p 2 Roper 134. Eden on Injunctions 213.

JULY 1828.

Smoot and Nicholson v. Lecatt.

her first husband, or as heir to her two children. In order to decide whether the plaintiff introduced sufficient evidence, it will be necessary to inquire: 1st, into the nature of the action of ejectment: and, 2ndly, the evidence necessary to support it.

*a* 3 Blk. 205.

*b* Adams on Eject. 247.

The action of ejectment is merely *possessory,* [a] and will always lie where there is a right of entry. [b] Hence priority of possession is sufficient to entitle a plaintiff to recover. In ejectment, if it appear by special verdict, that the plaintiff has a priority of possession, and no title is found for defendant, the plaintiff shall have judgement. [c] A naked possession is a sufficient title on which to recover against a mere trespasser who can shew no better title. [d] The first possession, when no title appears on either side, is sufficient. [e] The authorities refute at once the idea that nothing but a paper title will suffice in ejectment.

*c* 2 Saund. Allen vs. Rivington, Cro. Eliz. 437. 2 John. 22

*d* 2 Sarg.&Rawle 53 Adams on Eject. 31, notes.

*e* 10 John. 356. Adams on Eject. 76 note.

If the plaintiff does not rely upon his primer seizin or possession, he must then shew the title by which he claims; and he need not go further back than the person from whom he claims, [f] unless the defendant shews a title paramount. [g] In this case, the defendants either claim from the wife of Lecatt, or they do not. If they do claim from her, the case of Hitchcock against Henington, [h] settles the point that the defendant cannot question her title and seizin. [i] If they do not claim from her, their entry will be presumed to be in subserviency of the legal owner. [k] Suppose Mrs Lecatt was sueing instead of her husband, and the defendants shewed no title, would not the prior possession of her first husband and the devise be sufficient against a mere trespasser or intruder? [l] When one dies in possession, the presumption of law is, that an absolute inheritance is cast to the heir, [m] and so it is as to the devisee, who is viewed as an heir. The defendant in this action having shewn no title, nor having shewn an outstanding title in the *church* or the *crown,* must be viewed either in the light of a trespasser or an intruder, or as entering in subserviency to our title.

*f* Adams on Eject. 248, 252, 259.

*g* 10 John. 356. 2 Black. 198, 199. 3 Blk 176, 177.

*h* 6 John. 290.

*i* Co Litt. 47, b. Bac. Ab. title Dower 371. c. in notes.

*k* 3 John. Cases 124. 9 John. 163. Adams on Eject. 58, notes.

*l* 4 John. 202. Adams 31.

*m* Adams on Ej. 271, 253, in notes 76.

Mr Salle cited, in addition to the above mentioned authorities, Co. Litt. 152; Jacob's Law Dic. title *Seizin*; 2 Starkie's Ev. 519, 521, note k. 514; Peak's Ev. title Eject.; Bull. N. P. 103; 5 Taunt. 326; 2 Bay. 115, 476; 2 Blk. Com. 193, 195. App. No. sec. 5; 2 Henn. and Munf. 375–6; 10 John. 363; 2 Saund. 111; 11 John. 504; 2 John. 119; 6 John. 206.

By JUDGE SAFFOLD.

JULY 1828.

Smoot and
Nicholson
v.
Lecatt.

THE first question material to be considered is, whether Ann Lecatt, formerly Ann Surtill, during her widowhood, and at the time of her marriage with L. Lecatt, was seized of an estate of inheritance in the premises, whereof an estate by the curtesy could be created? There is no controversy respecting the general definition of an estate by the curtesy. The wife must have been seized of an estate of inheritance; the marriage must have actually taken place; there must have been issue by such marriage capable of inheriting the estate; and death of the wife. Here no question is raised as to the validity of the marriage. But it is contended on the part of the appellants, that no sufficient title to the premises is shewn to constitute a seizin during coverture, or at any other time. Reliance is placed on the effect of the ante-nuptial contract, and the decree therein referred to in the bill of exceptions, as well as the general doctrine on the subject of curtesy. It is necessary to inquire how the title would stand independent of the contract or decrees; then, the effect of either or both on the claim to curtesy.

There are no documentary evidences of original title on either side; but it is shewn that Surtill, the former husband, under whom Lecatt claims, had been in possession five or six years previous to his death, under a claim of right. It does not appear that his title was ever questioned during his life. He died, having devised all his estate, real and personal, to his wife, Ann, and his two children, then alive. She, within eight or ten months thereafter, having intermarried with Lecatt, the present plaintiff, and having possession of the premises, continued the same for some time after the marriage; she survived her said two children by Surtill, and became sole proprietor according to the sufficiency of the title. How long she continued in possession after the marriage is not precisely shewn, except that the premises appear to have been occupied by Mallory and others under him, for seven years before the institution of this suit. The nature or validity of his title does not appear otherwise than from the proof of the plaintiff, that he, Mallory, and those under whom he claimed, acquired the possession under a purchase from the said *Ann.* If we are to assume the fact, that Mallory immediately succeeded her in the possession, allowing the seven years possession to him and

others, anterior to 1825, when this suit was commenced, the calculation will continue her in possession about six years after the death of Surtill, and nearly the same time after her intermarriage with Lecatt, making ten or twelve years, without any allowance for the presumption that the subsequent occupants may have held under a lease or other qualified estate, derived from her. It is only stated in general terms, that they acquired the possession under a *purchase* from her. The term purchase, is appropriate either to the conveyance of a *lease* or a *fee;* and unless her capacity to transfer the latter during her coverture can be established, a more legitimate conclusion would be, that the former only was conveyed, if any. But it must be remembered, that there is no evidence connecting the title of the occupants referred to, with the possession of the defendant to the action. If such were the case, there could be no difficulty as to the validity of Surtill's title, as the rule is well established, that where each party claims under the same original title, neither can be permitted to contest its validity. As the case stands, the plaintiffs' claims must rest in the validity of his own title ; and unless the uninterrupted possession under claim of right by Surtill, during his life, and the subsequent possession of his wife, before and during her coverture with Lecatt, is sufficient, *prima facie*, to constitute an estate of inheritance, the title of the plaintiffs to curtesy cannot be sustained.

*a* 10 John. R.355.
In the case of Smith and Lorillard, [a] the plaintiff recovered in ejectment under peculiar circumstances, on evidence of possession less than twenty years, and a descent cast. Chief Justice Kent, in delivering the opinion of the Court, said, "it is not necessary that the plaintiff in ejectment should in every case shew a possession of twenty years, or a paper title. A possession for a less period will form a presumption of title sufficient to put the tenant on his defence." But further added, "it is, however, to be understood in cases to which this rule of evidence applies, that the prior possession of the plaintiff had not been voluntarily relinquished without the *animus revertendi*, as is frequently the case with possession taken by squatters, and that the subsequent possession of the defendants was acquired by mere entry without any lawful right." The principle of law appears to be well established, that " a prior possession short of

twenty years, under a claim or assertion of right, will prevail over a subsequent possession of less than twenty years. when no other evidence of title appears on either side." [a] As far as the principle has been settled, this appears to be the most current doctrine throughout the several States of the Union. The same may be said of the English decisions. [b] The true rule appears to be, that twenty years possession under a claim of right, creates a legal presumption of a grant, so that its production may be dispensed with, unless it should be rendered necessary to rebut a paper title, adduced by the adverse party; and such was the decision of this Court at the last term. [c] This is a lapse of time which, by our statute, is sufficient to toll the right of entry. The adoption of this period may be regarded as a legislative sanction given to the correctness of the above rule. We also hold that a like possession for a shorter period, creates a presumption of right less conclusive, but which is legally sufficient to regain or defend possession, unless the adversary can establish an anterior possession, without abandonment, or paper evidence of his title. Where the contest is on documentary evidence, a party, to succeed, must deduce title from the government. But where possession alone under claim of right must determine the preference, and neither has enjoyed the premises twenty years, so as to ripen his claim into a right of possession, and toll an entry, there can be no better criterion of right than that the earliest possession, accompanied with a color or plausible claim of title, should decide the preference; and such is the doctrine maintained by Chief Justice Kent in the decision referred to, " that on the same principle that possession by a d fendant under claim of right induces a presumption of title in him, proof of prior possession in the plaintiff, under like claim, without intention of abandonment, transfer the same presumption to the latter, and the tenant to recall that presumption must shew a still prior possession; and so the presumption may be removed from one side to the other *toties quoties*, until one party or the other has shewn a possession which cannot be overreached, or puts an end to the doctrine of presumptions, by shewing a regular legal title, or a right of possession." I can imagine no general rule that would promise more safety; for though such evidence of right is far from conclusive, it must be admitted that a prior peaceable possession by

JULY 1828.

Smoot and Nicholson
v.
Lecatt.

a Jackson vs. Hagen 2 John 22. Same vs. Myers 3 John R. 388, Same vs Harden 4 John R. 202–6 John. R. 213. 9 John. R. 174.
b Jayne vs Price, 5 Taunton, 326. Bateman vs Allen Cro. Eliz. 437. Allen vs Rivington. 2 Saunders 111.
c Stodder v. Powell, p. 287.

JULY 1828.

Smoot and
Nicholson
v
Lecatt.

one as the avowed owner, for a term much less than twenty years, should in common justice, as well as law, entitle him to a preference over another who has obtained more recent possession as a trespasser, or by any form of entry without color of right. It is also believed to be necessary to the harmony of society, by removing temptations to intrusion on the possession of others: nor can we perceive any sufficient reason why the rule of title by prior possession, should not be essentially the same in this State that is in other States of the Union, or in England. It may admit of a slight qualification from the consideration, that most, if not all, of our titles are derived from patents or certificates recently granted by the United States; together with the equally notorious fact, that the government has not yet divested itself of a large portion of the titles. It is true, that in this state of things the common presumption is, that a proprietor will be enabled to establish his right by deducing title from the government. The same argument applies equally to each party. But the contrary may often happen ; accident or misfortune may deprive many of their evidence. This danger will continue to increase in every part of the State. In the parts south of the 31st degree of latitude, where this controversy arose, the state of titles is now alarming. It is a fact notorious in history, that Mobile is an ancient city; has frequently changed sovereignty ; and during a large portion of the time, has been denied a regular organization of government. These are causes which may well expose land titles there to the greatest embarrassment and uncertainty.

With respect to the public lands, it is not to be presumed that squatters can, by possession, mature their claims to a *right of possession.* The issuance of a patent at a subsequent period would defeat them, or the archives of the government would shew, that a grant had never issued. An additional security consists in the maxim, that *nullum tempus occurrit regi.* In this case, the plaintiff cannot claim the benefit of twenty years possession. The possession on which he can rely, consists in the occupancy by Surtill, and the wife Ann, under color and claim of right, ten or twelve years including her widowhood, and part of her term of coverture with the plaintiff, and in his possession jointly with her, a short time during said coverture.

What is the shortest prior possession under color of right, that can be adjudged sufficient to create a legal presumption of title against one who holds a subsequent naked possession, does not appear to have been definitely fixed. The decisions in other Courts have been mostly confined to the facts of each particular case; but a shorter term than that shewn in the present case, has been held sufficient, under favorable corroborating circumstances. Perhaps the subject will not admit of any definite uniform period less than twenty years; that is a term sufficient to create a presumption of legal title, and confer an absolute right of possession. A much shorter time is allowed to prevail where no defence can be made. If, however, the time should be so short, or attended with such circumstances as will enable the tenant in possession, by any competent evidence, to paralyze all presumption of right claimed from it, he would be privileged to do so, and abide the determination of a jury thereon.

From the proofs here made, the defendants must be viewed as holding under a mere naked possession; or, as deriving title from the plaintiff's wife during coverture, which would then strengthen the inheritance. They assume the former attitude; hence it results. that the plaintiff's wife, during her coverture with him, had the actual possession of the premises, with at least the apparent right thereto, derived from prior occupancy of herself and former husband, under a claim of right. It is also material to remember that this grade of title is twofold; that in addition to the prior possession, a descent, or what is equivalent thereto, has been cast in favor of the plaintiff. A title by devise is believed to transfer substantially, the same interest to the devisee, that a legal descent would vest in the heir. And we recognise the doctrine, that the death of the possessor, who held under claim or color of right, transmits to the heir or devisee, at least an apparent right of possession. In this case, it may also be observed, that the devise was made to the same persons who, in case of intestacy, would, under the subsequent events, have become the heirs at law; and that the two children who were joint devisees with the plaintiff's wife died in her life time, whereby she became sole proprietor of whatever estate was transmitted, whether as heir to her children, or as survivor of the joint tenancy; and though this twofold claim may be insufficient to im-

76

prove and ripen the title unto an actual right of posses-
sion, yet it may well be allowed to strengthen and in-
crease the presumption of a legal right; and as we be-
lieve, is sufficient, as far as title in the plaintiff's wife is
material, for all the purposes of this action.

Seizin in the wife, was necessary to the creation of an
estate, in which a tenancy by the curtesy could be sus-
tained. If it has been shewn, as we think it has, that a
*prima facie* estate of inheritance resided in the wife, then,
inasmuch as the wife, jointly with the plaintiff, actually
occupied the premises, she was clearly seized of an es-
tate of inheritance, which could become the subject of
curtesy. Seizin is understood to mean nothing more
nor less than possession of an inheritance by the person
entitled. Possession by a lessee, or one having no evi-
dence of title, can create seizin in him. It must be by
one having at least presumptive evidence of title to the
inheritance; and which in this case, we think, existed in
the wife during the coverture.

The next inquiry is, does the ante-nuptial contract, or
the decrees in chancery, affect the plaintiffs' right? We
are clearly of opinion that neither of the decrees can ma-
terially influence the decision. A divorce *a mensa et thoro*
does not avoid any estate for the life of husband and
wife. In this case, the decree contains no expression re-
specting any of the property of either of the parties. It
merely declares a divorce from bed and board; and whe-
ther in relation to the wife's other bill, to enjoin the plain-
tiff from the use of her property, it was competent for
the chancellor to have extended the operation of the ante-
nuptial contract, is not now a question. It is sufficient
to say it has not been done. The decree contains only a
perpetual injunction against the plaintiff's committing any
waste of the estate, or disposing of the same, or receiving
any of the rents under a penalty therein expressed. It
did not materially vary the rights of either party in rela-
tion to the estate, from the situation in which they were
placed by the terms of the contract. In the lifetime of
the wife, it may have furnished authority to the chancel-
lor to attach the plaintiff, had he violated the injunction,
by intermeddling with the estate; but since her death, he
is left to abide the effect of his contract according to its
legal interpretation. What influence then can it have on
this claim to curtesy? The contract was made between

JULY 1828.

Smoot and
Nicholson
v.
Lecatt.

the plaintiff and his wife, without the intervention of trustees, previous to, and in contemplation of their marriage. It contained the stipulations that he "renounced all *claim, right, title, or interest*, to any part or parts of the estate of the late Thomas Surtill, in right of the said Ann Surtill, his intended wife; she to retain the said property of what nature soever for her *own use and benefit.*" In determining the effect of this contract, as well as the more important question, whether the wife was seized of an inheritance, which has already been considered, we have encountered some difficulty; but in the conclusion at which we have arrived, there is but little division. Inasmuch as the contract was entered into in anticipation of the marriage, and evidently intended to secure to the wife rights and privileges during coverture, to which she would not otherwise have been entitled, we think it does not necessarily follow that, for the want of the intervention of trustees, the contract was avoided by the subsequent marriage which was the object of it; but what relief, or whether any more than was given, could, during the coverture, have been administered, is now immaterial. It is only necessary to decide whether the terms of the contract import any diminution of the husband's right beyond the lifetime of the wife, or a renunciation of the curtesy in the event of his surviving her; or if they do, whether a court of law can regard it as a bar to the right of curtesy. It is true, that a renunciation of all claim, right, title or interest, is expressed in favor of the intended wife, for her own use and benefit. Nothing is said as to the direction of the estate after the death of either; had she been the survivor, or had she died without issue by him, his claim to curtesy could never have arisen. The contract will not warrant the conclusion, that the parties intended to disinherit the issue, if any; it gave no power of alienation to the wife, and without such, she could not exercise it during coverture. Then, if she died leaving issue, and the husband surviving, is it probable they intended he should not even then control the estate; or if he did, that he should account to his issue for the rents and profits? If such was the intention, we incline to the opinion that it was not sufficiently expressed, for the law construes such contracts most favorably to the *jus mariti.*

In the case of Robert against Deawell, [a] a devise was [a] 1 Atkins, 606.

JULY 1828.

Smoot and
Nicholson
v.
Lecatt.

made in trust for the separate use of a daughter, for and during her life, with an express direction that it should be for the separate benefit of herself; the rents and profits to be received by her, and such person as she should app int, so that her husband should not intermeddle *therewith;* and from and after her decease, in trust for the *heirs of her body,* forever. There, the chancellor maintained the doctrine of construction most favorable to the tenancy by curtesy. He denied the right of curtesy only on the ground that the devise was not a trust *executed,* but *executory,* and consequently there could be no *seizin* in the wife. But he expressly recognizes the principles, that in case of a devise to a wife for her separate use, though the Court might prevent the husband from intermeddling with the rents and profits during the life of the wife, yet the husband's tenancy by the curtesy would not be barred, "because in such case, a sort of *seizin* would vest in the wife." [a] We believe it would be difficult, according to correct interpretation, for any jurisdiction to construe this contract into a bar of the curtesy, and we have less hesitation in deciding, that a court of law has no authority to allow it as one.

*a See also* Tabb & others v. Archer & others 3. Hen. & Mun. 41c. Stewart v. Stewart, 7 John. Ch. R. 229.

It is further objected on the part of the defendants, that the bill of exceptions purports to contain all the evidence, and does not shew that the issue of the marriage was born *alive,* or that the issue was by his said wife; as it is only stated that the plaintiff "had issue after his marriage with the said Ann." If either of these facts were not proven to the satisfaction of the jury, the omission should have been fatal to the action; and if from the exceptions taken, it cannot now be reasonably inferred that they were proven, the exception is equally available in this Court. The record does not purport to state the evidence literally, as given in by the witnesses. As is usually the case, it is understood to present a summary of the material facts contested or admitted on the trial. By law, as well as the usual practice, exceptions are claimed and drawn out by the counsel for the party excepting, the Judge will refuse to sign, or will make corrections where material inaccuracies are discovered; but if the facts are intelligibly presented in the usual acceptation of the terms used, he is not presumed to be astute. The points are supposed to be stated by the counsel, as favorably to his client as the case will allow; and those on which he

JULY 1828.

Smoot and
Nicholson
v.
Lecatt.

chiefly relies, fully expressed. Then, what is the natural and reasonable inference from the language as stated? We think that it can only be, that there was proof of such issue as was material and necessary to sustain the action, or it would have been otherwise explained; and does not the expression of issue had, imply issue born alive, rather than still born? It is said in many books, by way of descriptions of curtesy, that four circumstances are absolutely necessary to the existence of the estate, namely: marriage, seizin of the wife, *issue*, and death of the wife. [a] We are of opinion, that the expressions taken as the language of the party excepting, sanctioned by the Judge, imply issue born alive; also, as issue by any other woman would have been irrelevant, we must intend the issue here mentioned to have been of the marriage.

[a] Cruise, 106, §.8.

To the form of the action, we believe there is no available objection. The statute evidently intended that this action should, in all things, supersede at least the common law action of ejectment. The question suggested in argument, whether the husband could under any circumstances, become heir to his wife's real estate, is found unnecessary to the decision of this case.

These are all the points recollected to have been particularly discussed. Hence, a majority of the Court are of opinion, that no error appears in the record, and that the judgement below must be affirmed.

## By JUDGE CRENSHAW.

IN this case, two material points present themselves for consideration: 1st. Was Ann Lecatt, during her intermarriage with Littleton Lecatt, seized of an inheritable estate; and 2nd. Did Littleton Lecatt, by virtue of the instrument of writing which he executed before his intermarriage with the said Ann, renounce his right to the curtesy?

As to the first proposition, the word *seized*, implies an inheritable estate; for a party cannot be seized of an estate for life or term of years, but is said to be possessed merely of those estates.

In the case of Powell and Stodder, [b] in a dissenting opinion, I gave my views at large, as to what I conceived the law in this country required a party to prove and establish, in order to enable him to recover in an action of trespass to try title. I then said, and again repeat, that if the existence of a grant is to be presumed from long pos-

[b] Ante, p.287.

JULY 1828.

Smoot and
Nicholson
v.
Lecatt.

session, it would be the best policy of the law, to limit that pre sumption to a period of time analogous to the statute of limitations; that if in this action, by our statute of limitations, adverse possession for thirty years, would form a good defence in bar of an action brought by a party holding a complete chain of title, from analogy, no length of possession short of that period would warrant the presumption of a grant in favor of a plaintiff, claiming by mere prior possesseion; that in England, in the action of ejectment, "long uninterrupted possession of an estate, by a man and his ancestors, was strong presumptive evidence of a fee, and from analogy to the statute of limitations, there, a clear undisturbed possession for twenty years was also presumptive evidence of a fee." [a] I contended that the abolition in this State, of the writ of ejectment, together with its fictions, destroyed some of the rules by which it was governed; and which, from the nature of the thing, can have no application to the action of trespass to try title; that under the old law. the plaintiff had both a complete title and the right of possession, yet he could not recover in ejectment, if the right of entry was tolled; which was effected by an adverse possession of twenty years, or by a descent cast. But in trespass to try title, it was not material whether the right of entry be taken away or not, and that the plaintiff with a sufficient title will recover, unless the defendant prove an adverse possession of thirty years, or proves that he is entitled to the present possession in virtue of some particular right; that ejectment was an action to recover possession of the land, in which title might incidentally come in question; but trespass in the language of the statute was emphatically an action to try the right and title, and in which possession is given as consequential only to a recovery; and that since the abolition of the action of ejectment, that section of our statute which takes away the right of entry within twenty years, and consequently bars the ejectment within that time, can now have no meaning, and has become inapplicable and obsolete; that generally in this action it was an indispensable requisite for the plaintiff in the first instance to shew that the land had been granted by the sovereign of the soil, and to trace a chain of title from the grantee to himself, by the best evidence the nature of the case admitted of; and that when the plaintiff relied on long possession, it was still necessary to prove that a grant did once exist; and that this

a 2 Starkie, 515.

JULY 1828.

Smoot and
Nicholson
v.
Lecatt.

was the proper and legal application of the rule which requires the plaintiff to recover by the strength of his own title, and not by the weakness of his adversary's; and I am yet of the same opinion. I cannot be persuaded, that mere prior possession, without fixing any definite period of time to govern in all similar cases, is sufficient to authorize a recovery in this action.

I was under the impression that the opinion of the Court, delivered at the last term, in the case of Powell and Stodder, was conclusive of this question. In that case the Court decided that twenty years possession by the plaintiff, or those under whom he claimed, should be considered as *prima facie* evidence of title. From reading that opinion, the rational and irresistible inference is, that the Court intended to be understood, that any possession short of twenty years would be insufficient. It is not so much as intimated, that a less period of time would be sufficient. The possession of Surtill, and of the Lecatts, husband and wife, taken together, fall considerably short of twenty years.

As to the second proposition, its solution must depend on a sound interpretation of Lecatt's relinquishment, executed by him previous to his intermarriage with Ann Surtill. By the terms of that instrument, he " renounced all claim, right, title or interest to any part of the estate of Thomas Surtill, which he might acquire by virtue of his intended marriage." The question is, whether this relinquishment extends to any interest or claim in that estate, which might accrue to him at the death of his wife, so as to bar his right to the curtesy? This, like all other instruments of writing, must be construed according to the obvious meaning and intention of the parties, as far as is consistent with the rules of law. It will be conceded on all hands, that this contract deprived Lecatt of the use and enjoyment of the estate, during the life of his wife; and from the generality of the terms expressed in the contract, it appears to me that it equally extends to rights and interests in that estate, derived to him on the decease of his wife; because his right to the curtesy is as much by virtue of the intermarriage, as was his right to the use and enjoyment of the land during the life of his wife; and if they are both rights and interests acquired by virtue of the intermarriage, then the ante-nuptial contract renounces and relinquishes as well the one as the other; as well the use of the estate during the

wife's lifetime, as the husband's right to the curtesy after her death. If this be not a fair construction, then I am unable to come at the meaning of words, or to understand the plainest expressions of our language. Indeed, I do not consider it necessary to resort to any rules of construction, for to my mind, the meaning and intention of the parties is apparent beyond a doubt; stronger words could not have been used, to bar Lecatt of all rights in the estate to be acquired by the intermarriage, unless "the right to curtesy" in *totidem verbis* had been expressed. Nor is Lecatt entitled to curtesy in the two third parts of the land devised to the children of Surtill, any more than in the third part devised to his wife by the will of Surtill; for if so, he must claim by virtue of the intermarriage a part of Surtill's estate: but his relinquishment extends to the whole of that estate. and consequently bars his right in all and every part thereof.

It has been said. that the relinquishment creates a trust estate, and that trustees are necessary to sustain an equitable interest, and that such a title cannot be set up as a successful defence to an action at law. I hold the law to be otherwise. A deed of trust is not void for want of a trustee; and such an instrument, though it create an equitable estate, may be used in resistance to an action at law.

But the instrument in the present case, bears no resemblance to a deed of trust, nor does it create any thing like a trust estate, but is a mere relinquishment, or absolute conveyance of a future interest or estate, to take effect from and after the marriage; it operates as a merger of Lecatt's future interest, so that the estate might remain the same after as before the marriage. The clear and manifest intention of the parties was, that Lecatt should acquire no right or interest in Surtill's estate by virtue of the intermarriage, but that it should remain in the same condition, according to the provisions of Surtill's will, as if his widow had never intermarried with Lecatt.

Upon the entire case, I am of opinion that Ann Lecatt was not seized of an inheritable estate, and that if she was, her husband Lecatt, the plaintiff below, renounced his right to the curtesy, and that the judgement should be reversed.

                                    Judgement affirmed.

The CHIEF JUSTICE not sitting.

(NOTE. See the next case, which was decided at the same time, and on the same title.)