## HUNTER v. WHITWORTH, ET UX, ET AL.

1. Where the father and mother intermarry after the birth of a child, the offspring of their illicit intercourse, and the wife die without issue subsequently born, the child becomes legitimate in virtue of the statutes, and the husband shall be tenant by the curtesy of the lands of which the wife was seized, and did not alienate previous to their marriage.

Error to the Circuit Court of Jackson.

THIS was an action of trespass, at the suit of the defendants in error, to try the title to a tract of land, particularly described, as well as to recover damages for the occupation thereof by the plaintiff. The cause was tried upon the *general issue*, a verdict returned for the plaintiffs, and judgment rendered accordingly. From a bill of exceptions sealed at the instance of the defendant, it appears that a patent was issued in due form, by the President of the United States, for the premises in question, to Sarah McCamack, in 1829; that she resided thereon from that time until her death, which occurred in 1841, and that the plaintiffs, except the husbands of the females, are her only, and illegitimate children. The plaintiff, William Hunter, is her youngest child, and was born in the year 1829. Sarah McCamack and the defendant intermarried between the years 1832 and 1835, and from that time defendant occupied the premises.

Wm. Hunter had been recognized by Sarah McCamack and the defendant, as the child of the latter, and was generally so reputed in the neighborhood. Upon this proof, the court charged the jury, that although Wm. Hunter was the child of Sarah McCamack by the defendant, and was legitimated by the marriage of his parents, yet if they believed the facts above stated, they must find for the plaintiffs.

It was also proved, that George W. Mitchell, one of the plaintiffs, executed a deed on the 22d October, 1839, pur-

porting to bargain and sell all his claim " or pretended claim for one hundred and sixty dollars," to the defendant, that he held on the eighty acres of land on which he then lived, and gave him all right from that time to claim the land, and stipulated to give to the defendant peaceable possession of his field and house, with all appurtenances, on or before the 25th *September next.* The court charged the jury, that this deéd formed no bar to the plaintiff's right to recover, if the other facts given in evidence were credited by them.

C. C. CLAY, Sen'r, and C. C. CLAY, Jr. for the plaintiff in error, cited to the first point, Co. Litt. 435-8-9-40-1-7 ; Preston on Es. 473-8 82-5, 524 ; 1 Atk. Rep. 603 ; 1 Ves. Rep. 174 ; 1 Greene's Dig. 149, 153, 325 ; 3 Rand. Rep. 377.] Upon the second point they referred to 1 Chitty's Pl. 56 ; Tillinghast's Adams on Eject. 275, 286 ; 4 Johns. Rep. 140 ; 13 Johns. Rep. 286 ; 1 Tenn. Rep. 237 ; 3 Ala. Rep. 747 ; 7 Id. 480.]

S. PARSONS, for the defendants in error, to sustain the first charge of the court, cited 1 Co. Lit. 662, marg'l. The deed by Mitchell, if not void for uncertainty, passed no interest to the defendant, because the grantor had only a mere possibility, which was not grantable. [12 Johns. Rep. 201 ; 13 Id. 463 ; 14 Id. 193 ; 2 Hill's Rep. (N. Y.) 641.]

COLLIER, C. J.—It is laid down in general terms, by elementary authors, that where a man marries a woman seized of an estate of inheritance in lands, and has by her issue born alive, which was capable of inheriting her estate, he shall on the death of his wife, hold the lands for his life as tenant by the curtesy. [2 Bla. Com. 126 ; Step. Com. 246 ; 1 Lomax, 65-6.] Whether this estate is a consequence of feudal tenure, is a point perhaps upon which all are not agreed ; it is however, stated by all the text writers, that the husband is the natural guardian of the child, and as such, is in reason entitled to the profits of the land, in order to maintain it. " As soon, therefore, as any child was born, the father began to have a permanent interest in the lands, he became one of the *pares curtis,* did homage to the lord, and was called

tenant to the curtesy *initiate;* and this estate being once vested by the birth of a child, was not suffered to determine by the subsequent death or coming of age of the infant." There are four requisites to constitute a tenancy by the curtesy, viz: Marriage, seizin of the wife, issue born alive, and the death of the wife. *See the citations above.*

It has been held not necessary that there should be seizin and issue at the same time ; and therefore if the wife become seized of lands during the covertu̲re, be afterwards disseized and then have issue, the husband shall be tenant by the curtesy of those lands. So if the wife become seized after issue born, though the issue die before the seizure. [Jackson v. Johnson, 5 Cow. Rep. 74; see also, 2 Conn. Rep. 565; 5 Id. 236.] In Heath v. White, 5 Conn. Rep. 235, it was said, though the tenure by curtesy may have originated from the husband's obligation to support his children, yet the extent of his interest is not measured by this reason for its introduction. He is entitled to hold for life, whether his children need his support or not, and whether they live an hour only or to old age. And it has been decided in this State, that a decree of divorce, *a mensa et thoro*, pronounced against the husband, does not bar him of the right of curtesy. [Smoot v. Lecatt, 1 Stew. Rep. 590.]

Where B. devised the whole of his estate to his daughter, "to her, her heirs and asigns forever," but if she should die without issue, his whole estate was to be sold by his executors, and the money arising therefrom, after his widow's decease, to be equally divided among his brother's and sister's sons. The daughter married, and had issue which died during her life. Yet it was held that the husband was entitled to her estate, as tenant by the curtesy. [Buchanan v. Sheffer, 2 Yeates' Rep. 374.] We cite these cases to show the favor with which the law regards this description of estate, with what liberality it extends it, even beyond the object for which its introduction was mainly intended to provide ; that it is protected, although the wife is absolved from the obligation of living with her husband, in consequence of some fault of his; and that even the express terms of a devise, shall be so construed as not to divest a tenancy by the curtesy, if the husband's right once attached. Having said

thus much in respect to the estate in general, we now proceed to consider it in reference to the statutes, which it is insisted for the plaintiff in error, are decisive of the case at bar. By the act of 1806, for the regulation of descents, and the distribution of estates, among other things, it is enacted, "Where a man having by a woman a child, or children, shall afterwards intermarry with such woman, such child or children, if recognized by him, shall be thereby legitimated." [Clay's Dig. 168, § 3.] The act of 1811, "concerning bastardy," provides, that if the mother of a bastard child and the imputed father shall, at any time after its birth, intermarry, the child shall in all respects be deemed and held legitimate, conformably to the maxim of the civil law. [Clay's Dig. 134, § 6; see also, Croke on Illegitimacy, 95.]

By legitimating a bastard, we are to understand that he is placed in the same state as if he were born in wedlock, that is, in a lawful manner. Marriage is considered by all civilized nations as the source of legitimacy; the qualities of husband and wife must be possessed by the parents in order to make the offspring legitimate, where the municipal law does not otherwise provide. [See the Civil Code of Lou. Arts. 203 to 216.] In the same work it is declared, that children born out of marriage, except the fruit of an incestuous or adulterous connection, may be legitimated by the subsequent marriage of their father and mother, whenever they have legally acknowledged them as their children. And children legitimated by a subsequent marriage, have the same rights as if they were born during marriage. [Id. Arts. 217, 219.]

Marriage then is regarded as the primary essential to legitimacy, and the produce of an illicit connection are, in a legal sense, expurgated when the parents form such a union. The law regards such a child for all purposes as if born in wedlock—the duties and obligations which such a child and its parents respectively owe to each other, are precisely the same as if marriage had preceded its birth. It can inherit and transmit the inheritance in consequence of its paternity, to and from the relatives of the father. No matter from what source the tenancy by the curtesy takes its origin or upon what reasoning it originally rested, the rights and duties of

Carville, &c. v. Reynolds.

the father in respect to such a child, are the same in all respects, as if he had been legitimate from his birth.

If what we have said be well founded, the father is under a legal as well as moral obligation to provide for his legitimated offspring, above what the *law requires* him to do for a bastard child.   To enable him to perform the duty of maintenance, we think he clearly must, at common law, be entitled to the lands of which the wife was seized during coverture.   That this much favored estate by the curtesy may be upheld and secured, the husband may, by a kind of legal fiction, *pro re nata*, be presumed to have married previous to the birth of the child.   This presumption could do harm to no one, as it would not of course be carried so far as to divest interests which the wife had passed from herself between the birth of the child and the marriage.

Having attained a conclusion favorable to the plaintiff in error upon the first point, we need not consider the second. Let the judgment be reversed and the cause remanded.