# Terry, *et al. v.* Hood, *et al.*

## *Ejectment.*

(Decided May 11. 1911. 55 South. 423.)

1. *Wills; Construction; Heirs; Heirs of the Body.*—Unless the word. "heirs" or "heirs of the body" mean "children," then a devise to one for life, and at her death to her heirs or the heirs of her body, creates an estate tail under the rule in Shelley's case, converted into a fee simple by the statute of 1812. (Clay's Digest, page 157, section 37.)

2. *Same; Meaning of Legal Expression.*—Where a will is written by one ignorant of the meaning of legal terms and there are in the instrument itself terms showing that the testator intended, "child-

[Terry, et al. v. Hood, et al.]

ren" by the use of the word "heirs," the word "heirs" will be construed to mean children, though such a construction must be reached from the words of the will itself, and not merely by the supposition of the court.

3. *Same; Estates Acquired; Separate Estate of Wife; Curtesy of Husband.*—A devise to a testatrix's daughter for life, and at her death to her heirs and the heirs of her body, entirely free from the control of the husband, and without liability for his debts, creates in the daughter an equitable separate estate, as distinguished from a statutory separate estate under the married woman's law, and an estate in lands held by a married woman at common law, and excludes the husband's right of curtesy.

4. *Same; Changing Estate; Statute.*—The statute which changed the estate tail to a fee simple estate is not based on the intention of the testator, but on a public policy forbidding the creation of such an estate. although intended by the testator.

5. *Same; Heirs and Heirs of the Body.*—The will considered and it is held to create a fee simple estate in the daughter, as the words "heirs" and "heirs of the body" could not properly be construed to mean children, and the will was executed, while the rule in Shelley's case was in force, and while the married woman's law of 1849-50, under which a husband became the trustee of his wife's separate estate, was in force.

APPEAL from Walker Law and Equity Court.

Heard before Hon. THOMAS·W. WERT.

Ejectment by W. G. Terry and others against Charlie Hood and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

The will is as follows: "State of Alabama, Morgan County. I, Nancy Turner, of the county and state aforesaid, being of sound, disposing mind and memory, do make, publish and declare this my last will and testament, in manner and form following: I wish my just debts to be first paid. Item 1, I will and bequeath to my daughter, Mary L. Terry, for and during her natural life, and at her death to be equally divided between her heirs, and entirely free from the control of her husband and W. I. Terry, my two negro girls, to wit, Pleasant, about eighteen years old, and Harriet, about thirteen years old, and my metal clock, and also my tract of land lying north of Garner's, and south of G. Moore's, being the same tract of land purchased by me from

James Campbell, reference being made to Campbell's deed to me. My further will is that the above named property shall belong to my said daughter Mary L., and the heirs of her body, and that said property shall not be liable for any debts the said W. I. Terry now or may hereafter owe. Item 2. It is my will and desire that the balance of my property be equally divided among four of my children, to wit, Anna Eliza Rice, wife of Green I. Rice, Priscilla B. Robinson, wife of J. G. Robinson, Henry B. Turner, and my said daughter Mary L. Terry, share and share alike." Henry B. Turner is nominated as the executor, and the will is dated April 30, 1851, and was admitted to probate and established as the last will of Nancy Turner on June 9, 1853.

TROUP & NIX, and TIDWELL & SAMPLE, for appellant. No brief reached the Reporter.

E. W. GODBEY, for appellee. Under the rule in Shelley's case the absolute property vested in the first taker. —*Hamner v. Smith*, 22 Ala. 433; *Holt v. Pickett*, 20 South. 434. This entire controversy is governed by the rule in Shelley's case, as the rule was abolished Jan. 17, 1853, and the will in question was probated June 9, 1853. A terse statement of that rule is found in *Machen v. Machen*, 15 Ala. 357. The words, "heirs of the body are words of limitation and not of purchase.— *Bridges v. Phillips*, 25 Ala. 136; *McCullough v. Glidden*, 33 Ala. 208. As for the proper construction of the will in question, see *English v. McCrary*, 48 South. 113; *McQueen v. Logan*, 80 Ala. 305; 45 Conn. 422; 1 Cold. 44; 25 N. J. Eq. 324; 116 S. W. 740; 82 Am. Dec. 126; 108 N. W. 1033.

SIMPSON, J.—This is an action of ejectment (statutory) by the appellants against the appellees. The ap-

pellants claim as the grandchildren of Nancy Turner, who had the legal title to the lands in question. Said Nancy Turner left a will, which will be copied into the statement of the case by the reporter. The defendants introduced a deed, purporting to have been executed by the plaintiffs and other heirs of said Nancy Turner, conveying the said property to one W. C. Mayhall on November 12, 1878; also evidence as to the execution, signatures, etc.; also proof of adverse possession for more than 24 years.

The plaintiffs denied the execution of said deed, and testified that they were not in the state of Alabama at the time said deed purports to have been executed. The will in question having been made April 30, 1851, before the "rule in *Shelley's Case*" was abolished by statute in this state, and subsequent to the married woman's law (Acts 1849-50, p. 63), by which the husband became trustee of the wife's separate estate, the question argued in the briefs of appellants and appellees is as to the nature of the estate created by the will

There can be no controversy about the point that, unless the words "heirs of the body," in the will can be interpreted to mean "children," the will created an estate tail, under the rule in *Shelley's Case,* and, under the operation of the statute of 1812 (Clays Dig. p. 157, § 37), such estate was converted into a fee simple. (The same result would follow if the word "heirs' in the first part of the deed were not controlled by the specific designation, "heirs of the body," in the latter part.)—*Mason v. Pate's Ex'r,* 34 Ala. 379, 385; *Machen, Ex'r, v. Machen,* 15 Ala. 373, 375, et seq.; *Ewing v. Standefer et al.,* 18 Ala. 400, 404-405; *Hammer, Admr, v. Smith,* 22 Ala. 433.

While it is true that, when a will is evidently written by a person who is ignorant of the meaning of legal ex-

pressions, and there are, in the instrument itself, terms used which show that the testator intended "children" by the use of the word "heirs," it will be so construed; but this conclusion must be reached, not merely by the supposition of the court, but by the words of the instrument itself.—*Cases supra,* and *De Bardelaben v. Dickson et al.,* 166 Ala. 59, 51 South. 986.

The expressions in the will, "free from the control of her husband," and "shall not be liable for any debts the said W. I. Terry now or may hereafter owe," were evidently intended to create in the wife an equitable separate estate, as distinguished from both the statutory separate estate then existing by statute and an estate in lands held by a married woman at common law. Although the statute provided for a statutory separate estate, yet it was always recognized that by the express provisions of a deed or will a separate equitable estate could be vested in a married woman. This intention manifested in the will does not tend to show that the testatrix did not understand the meaning of the word "heirs," or that she intended to say "children" in place of "heirs."

In an early case, where the deed conveyed property to C. V. P. "during her natural life, for her sole and separate use, free from the control or any liabilities or debts of her husband," and afterwards "to the heirs of her body," this court said the deeds "vest a separate estate in her by their terms, and expressly exclude the marital rights of her husband. It is true that the donors limit the property, after her death, to 'the heirs of her body;' but this does not inure to the benefit of her husband. The only effect it can have is to vest an absolute estate in the complainant, who is the first taker."— *Bridges & Co. et al. v. Phillips,* 25 Ala. 136, 138, 60 Am. Dec. 495.

In another case, where the deed (made in 1840) conveyed to a trustee "for the sole private and independent use, benefit, and advantage of the said E. J. McC. for and during the time which she shall remain the wife of D. McC., and, if she shall die before her said husband, then to the sole use and benefit of the heirs of her body forever," and provided that the hire, use, etc., "are from time to time, and at all times during said coverture, to be and remain to the sole and separate enjoyment of said E. J. during her life, and after her death to the heirs of her body, and not subject nor liable to the control, authority, power, disposal, possession, or interference of her said husband," it was held that the absolute title was vested in the trustee for the separate use of Mrs. McC., and that the words "heirs of her body" were words of limitation and not of purchase.—*McCullough and Wife v. Cliddon*, 33 Ala. 208.

The appellants argue that the testatrix evidently did not intend that the husband of her daughter should have any control of or interest in the property, either during his wifes' life or after her death, and she could not have intended, by the will, to create a fee simple in the wife, because thereby her intention would have been defeated, as the husband would be entitled to curtesy in the land on the death of the wife.

In the first place, even if the premise be correct, the conclusion does not follow; for the tendency of our decisions indicates that if, as we hold, the testatrix intended to create a separate equitable estate in the daughter, and supposed she had done so, the husband's curtesy would be excluded. It is true that the case of *Smoot v. Lecatt*, 1 Stew. 590 holds that where the husband, by antenuptial agreement, renounced all his claim, right, title, or interest to any part of the wife's property, he was not barred of his curtesy. In a sub-

sequent case, however, this court held that, under a similar agreement as to personal property, the husband could not claim any interest in the same after the death of the wife.—*Randall, Adm'r, v. Shrader,* 20 Ala. 338, 344. In the case of *Grimball v. Patton,* 70 Ala. 627, 635, this court, speaking through Stone, J., said (in regard to land held by the wife as a separate equitable estate) : "His marital rights never having attached to this property during Mrs. G.'s life, by reason of the words of exclusion in Dr. M.'s will, they cannot under our rulings attach after her death" (basing the conclusion on the analogy of personal property not reduced to possession). In a later case, this court, speaking through Stone, C. J., refers to this as a dictum, and, without deciding the point, criticises the *Lecatt Case,* and intimates concurrence in the dictum in the *Grimball Case.—Carrington v. Richardson,* 79 Ala. 106. In a later case, this court, speaking through McClellan, J., said : "The muniment under which J. held the land vested it in her to her sole and separate use, and excluded all the marital rights of Antoni. It may be—indeed, we incline to this as the doctrine better supported by reason and authority, though we have an adjudication to the contrary (*Smoot v. Lecatt,* 1 Stew. 590)— that this fact, of itself, suffices to defeat an estate by curtesy in the surviving husband."—*Nicrosi v. Phillipi,* 91 Ala. 299, 307, 8 South. 561, 563. In a very recent case, treating of the right of the husband as distributee of his wife's statutory estate, this court said : "This doctrine is not in conflict in the slightest with what was said in the case of *Nicrosi v. Phillipi.*" *Dake et al. v. Sewell et al.,* 145 Ala. 581, 585, 39 South. 819, 820. Under these decisions, even if we can presume that the testatrix was learned in the law, so as to consider the effect upon the husband's curtesy of her attempt to cre-

[Terry, et al. v. Hood, et al.]

ate a separate estate in her daughter, we cannot infer that she meant "children" when she said "heirs," because the use of the word "heirs' would defeat her purpose.

In the next place, the will does not intimate any intention to deal with his *interest* in her estate after her death, but only his *control,* which was a word well known in relation to statutory separate estates, and to the liability for debts created by him, evidently referring to debts created during coverture. It is not necessary to decide whether she did in fact create a separate equitable estate, or whether, if she did so, the husband would be barred of his curtesy; what has been said being merely to the effect that these expressions do not furnish a legitimate argument for supposing that the testatrix did not mean "heirs' when she so expressed it.

In the third place, the statute which changes an estate tail into a fee-simple estate is not based upon the intention of the testator, but upon the public policy which forbids the creation of such an estate, though so intended.

It follows that the will created a fee-simple estate in the first taker, and, the adverse possession of 20 years being established by the defendants, then, without regard to the genuineness or not of the deed purporting to have been made by the plaintiffs, the court did not err in giving the general charge in favor of the defendants, nor in refusing the general charge requested by the plaintiffs.

The judgment of the court is affirmed.

Affirmed.

ANDERSON, SAYRE, and SOMERVILLE, JJ., concur.